**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **ROBERT WARREN EDWARDS** | ) | **CASE NO. 19-00248-5-DMW** |
| **SSN:  XXX-XX-4963** | ) | |
| | ) | **CHAPTER 7** |
| **TRENA HARDISON EDWARDS** | ) | |
| **SSN:  XXX-XX-3733** | ) | |
| | ) | |
| | ) | |
| **DEBTORS** | ) | |

**MOTION FOR RELIEF FROM STAY APPLYING 11 U.S.C. § 362(e)**

Pursuant to Section 362(d) of Title 11 of the United States Bankruptcy Code, as amended (the "Bankruptcy Code") and Bankruptcy Rules 4001 and 9014, Caliber Home Loans ("Movant"), through counsel, hereby moves the Court for an Order for relief from the automatic stay provisions of 11 U.S.C. §362(a).

In support of its motion, Movant shows the Court that:

1.  On or about January 18, 2019, the Debtors filed a petition with the United States Bankruptcy Court for the Eastern District of North Carolina for relief under Chapter 13 of the United States Bankruptcy Code and on or about November 25, 2019, the Debtors converted their Chapter 13 bankruptcy to Chapter 7.

2.  This Court has jurisdiction over the motion pursuant to the provisions of 11 U.S.C. §362 and Bankruptcy Rules 4001 and 9014.  This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §1334, the Referral Order entered herein by the Chief United States District Court Judge for the Eastern District of North Carolina and 11 U.S.C. §362.  Bankruptcy Rules 4001 and 9014 apply.  This matter is a core proceeding as defined in 28 U.S.C. §151 and 157(b) and to the extent any non-core issues are raised, Movant consents to the jurisdiction of this Court for determination of all issues, including non-core issues.

3.  John C. Bircher, III is the duly appointed Trustee in the Debtors' Chapter 7 proceeding.

4.  Movant is the servicer for U.S. Bank Trust, N.A., as Trustee for LSF 10 Master Participation Trust holder of a secured claim in this proceeding.

5.  On or about January 17, 2006, Robert W. Edwards executed a Promissory Note ("Note") in the original principal amount of $225,000.00, a copy of which is attached hereto and incorporated herein by reference.  Said Note was modified pursuant to the terms of Loan Modification Agreement dated November 19, 2014, a copy of which is attached hereto and incorporated herein by reference.

6.  The Note referred to in the preceding paragraph is secured by a Deed of Trust on real property owned by the Debtors and known as 105 Barkside Lane, New Bern, North Carolina 28562 and more particularly described in a Deed of Trust recorded in Book 2407, Page

282, Craven County Registry, North Carolina.  A copy of the Deed of Trust is attached hereto and incorporated herein by reference.

7.  Movant services the loan on the property referenced in this motion for relief.  In the event the automatic stay in this case is lifted, the case is dismissed, and/or the Debtors obtain a discharge and foreclosure action is commenced on the mortgaged property, that foreclosure will be conducted in the name of the noteholder.  Movant, directly or through an agent, has possession of the Note.  The Note is either made payable to said entity or has been duly endorsed.

8.  At the time of filing of this motion, the Debtors were in default on their obligations to Movant.

9.  Movant is a secured creditor in the Debtors' bankruptcy proceeding.  Pursuant to the Debtors' Chapter 7 petition, the Debtors intend to retain the subject property.  The Debtors are in substantial default.  The total arrearage due under the Note through January 1, 2020, is at least $53,755.87. A breakdown of the arrearage is as follows:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 17 | 09/01/17 | 01/01/19 | $1,644.82 | $27,961.94 |
| 12 | 02/01/17 | 01/01/20 | $1,627.77 | $19,533.24 |
| Uncollected Fees | | | | $6,260.69 |

Total: $53,755.87

10.  As of the filing of this motion, the unpaid principal balance on the above described debt to Movant was $194,532.89, plus interest accruing at the rate of 6.25%, accumulated late charges and fees.  The amount necessary to pay the loan in full is in excess of $244,209.70.

11.  The fair market value, based on the Debtors' Petition is $365,130.00.

12.  Based upon the foregoing, equity exists in the subject property to allow Movant its attorney fees and costs to be assessed against the mortgage account pursuant to the security documents.

13.  Pursuant to section 362(d)(1) of the Bankruptcy Code, the Court may modify the automatic stay for cause, including the lack of adequate protection of an interest in property of such a party in interest 11 U.S.C. 362(d)(1).  Movant is not adequately protected and the Debtors have not offered any adequate protection in regards to the missed ongoing monthly payments.  Further, "cause" exists under 11 U.S.C. § 362(d)(1) because the Debtors have failed to maintain the ongoing monthly payments to Movant.  Movant is entitled to relief from stay to foreclose on its security interest in the property identified in the Deed of Trust.

14.  Movant will suffer irreparable injury, loss, and damage in the event relief is not granted.

15.  Movant has incurred reasonable attorney's fees and costs in connection with the prosecution of this motion.

**BASED UPON THE FOREGOING,** Movant respectfully asks that:

1.  The stay imposed by 11 U.S.C. §362(a) be terminated, annulled, or modified to permit Movant to foreclose its security interest in the property identified in the Deed of Trust; that said relief is immediate, and the waiting period of F.R.B.P. 4001(a)(3) does not apply; or in the alternative that it receive adequate protection from the Debtors;

2.  The hearing of this motion be the final hearing under 11 U.S.C. §362(c) and any preliminary hearing be consolidated herein and Orders entered accordingly;

3.  It be granted reasonable attorney's fees pursuant to 11 U.S.C. §506; and,

4.  It have such other and further relief as the Court deems just and proper.

This the 31st day of January, 2020.

HUTCHENS LAW FIRM LLP

BY:  _s/Joseph J. Vonnegut_____
          JOSEPH J. VONNEGUT
          Attorney for Movant
          NC State Bar No: 32974
          Post Office Box 2505
          4317 Ramsey Street
          Fayetteville, NC 28302
          (910) 864-2668

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.  THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **ROBERT WARREN EDWARDS** | ) | **CASE NO. 19-00248-5-DMW** |
| SSN: XXX-XX-4963 | ) | |
| | ) | **CHAPTER 7** |
| **TRENA HARDISON EDWARDS** | ) | |
| SSN: XXX-XX-3733 | ) | |
| | ) | |
| | ) | |
| DEBTORS | ) | |

**NOTICE OF OPPORTUNITY FOR HEARING**

TAKE NOTICE that an application or motion has been filed by Caliber Home Loans ("Movant"), servicer for U.S. Bank Trust, N.A., as Trustee for LSF10 Master Participation Trust, its successors and/or assigns, as their respective interests may appear. A copy of the application or motion accompanies this Notice.

TAKE FURTHER NOTICE that any response, including objections, to the relief requested in the attached application or motion, should be filed with the Clerk of the Bankruptcy Court within fourteen (14) days of the date of this Notice and a copy served on the attorney identified below and upon other parties as required by law or court order. Any response shall clearly identify the specific motion or application to which the response is directed.

TAKE FURTHER NOTICE that if a response and a request for a hearing is filed by the Debtors, Trustee, or other parties in interest named herein in writing within the time indicated, a hearing will be conducted on the motion and response thereto at a date, time and place to be later set by this Court and all interested parties will be notified accordingly. If no request for a hearing is timely filed, the Court may rule on the motion and response thereto ex parte without further notice.

This the 31st day of January, 2020.

HUTCHENS LAW FIRM LLP

BY: _s/Joseph J. Vonnegut_
JOSEPH J. VONNEGUT
Attorney for Movant
NC State Bar No: 32974
Post Office Box 2505
4317 Ramsey Street
Fayetteville, NC 28302
(910) 864-2668

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

LOAN NUMBER: ▓▓▓▓▓▓

# NOTE

| | | |
|---|---|---|
| 01/17/06 | NEW BERN | NC |
| [Date] | [City] | [State] |

105 BARKSIDE LANE, NEW BERN, NC 28562

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 225,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on MARCH 01, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 01, 2036 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at BANK OF AMERICA, P.O. BOX 9000, GETZVILLE, NY 14068-9000 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,386.37 .

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     4.0     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

BS5N (0101)

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_(signature)_ _____ (Seal)
ROBERT W. EDWARDS                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_(Sign Original Only)_

PAY TO THE ORDER OF
WITHOUT RECOURSE
BANK OF AMERICA, N.A
BY _(signature)_ CHRISTINA M. SCHMITT
ASSISTANT VICE PRESIDENT

BS5N (0101)                    Page 3 of 3

Investor Loan #    _____ ███████ _____

**After Recording Return To:**
Bank of America, N.A.
11802 Ridge Parkway, Ste 100 HRM
Home Retention
Broomfield, CO 80021

This document was prepared by Bank of America, N.A.

_____[Space Above This Line For Recording Data]_____

### FREDDIE MAC LOAN MODIFICATION AGREEMENT

Borrower ("I"):[1] ROBERT W EDWARDS
Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and
Note ("Note"): 01/17/2006
Loan Number: ███████████████
Property Address: (See Exhibit A for Legal Description if applicable) "Property":
105 Barkside Lane, New Bern, NC 28562
See Exhibit B for assignments of record if applicable

If my representations and covenants in Section 1 continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

_____

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

1.  **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  The Property has not been condemned;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Freddie Mac Modification Program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so;

    G.  I have made or will make all payments required under a trial period plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/01/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 12/01/2014.

    A.  The Maturity Date will be: 11/01/2054.

B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $197,868.69 (the "New Principal Balance"). Any fees or charges incurred in connection with the servicing of your loan which were not invoiced before we calculated the Unpaid Amounts will appear on your monthly statement under "Fees and Charges." These amounts may be paid when billed or at any time afterward. They will not accrue interest or late fees. If they remain unpaid, they must be satisfied at the earlier of: (i) the date you sell or transfer an interest in the Property, (ii) the date you pay the entire New Principal Balance, or (iii) the Maturity Date. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  Interest at the rate of 6.250% will begin to accrue on the New Principal Balance as of 11/01/2014 and the first new monthly payment on the New Principal Balance will be due on 12/01/2014. The repayment terms of my modified loan are as follows:

Maturity Date: 11/01/2054
Interest Rate: 6.250%
New Principal Balance: $197,868.69
First Modified Payment Due Date: 12/01/2014
Number of Monthly Payments: 480
Monthly Principal and Interest Payment: $1,123.38
Estimated Monthly Escrow Payment: $628.78
**Total Monthly Payment: $1,752.16**

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. The total monthly payment amount shown does not include any fee for optional Borrowers Protection Plan or the cost for any other optional products that may be on the loan.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3C.

4.   **Additional Agreements**. I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Freddie Mac Loan Modification Program.

L.  BORROWERS PROTECTION PLAN. If I have a Loan with optional Borrowers Protection Plan® ("BPP") under my Loan Documents, then I understand and agree that, unless I notify Lender of my request to cancel BPP or my BPP has already been cancelled or terminated in accordance with its terms, my BPP will remain on my Loan, as modified in accordance with this Agreement, and will continue to be governed by the terms of my Borrowers Protection Plan Addendum, which is the contract containing the terms and conditions of BPP that I received at closing of my original Loan.

I understand that I may cancel BPP at any time by calling 1.866.554.2676. If I notify the Lender of my request to cancel BPP within sixty (60) days after the Modification Effective Date, I will receive a refund of any BPP fees I pay with respect to any period after the Modification Effective Date. I further understand that BPP on my Loan may have already been cancelled or terminated by its terms, such as if any monthly fee for BPP has remained unpaid 90 days after its due date. I understand that if I have received or receive a cancellation notice for BPP due to unpaid BPP fees for one or more of the months in any trial period required as a condition to this Agreement, **I must request reinstatement of BPP within thirty (30) days following the Modification Effective Date by calling 1.866.317.5116 if I wish to have BPP on my modified Loan.** If BPP is reinstated on my loan, BPP will continue to be governed by the terms of my Borrowers Protection Plan Addendum that I received at the closing of my original Loan. **I understand that if BPP remains or is reinstated on my modified loan, the monthly fee for BPP will be in addition to my new modified Total Monthly Payment.**

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers Protection Plan Addendum will be the monthly payment of principal and/or interest as modified under this Agreement. With the exception of BPP benefits based on the outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan, for events occurring on or after the Modification Effective Date, will be calculated based on this new Monthly Payment amount, subject to the terms of the Borrowers Protection Plan Addendum.

For purposes of my modified Loan, the monthly fee for BPP, which is the monthly amount charged to me for BPP, will be recalculated based on the percentage set forth in my Borrowers Protection Plan Addendum (or Borrowers Protection Plan Confirmation Letter, as applicable). I understand that the monthly fee for BPP, as a percentage of my monthly payment of principal and/or interest as modified under this Agreement, may be higher if the monthly payment under my modified Loan is or becomes higher than the monthly payment that was due on my Loan prior to modification under this Agreement. The monthly fee for BPP will be payable at the same time and place as payments of principal and/or interest under my modified Loan. The "Protection Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP became effective, and the "Expiration Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP will automatically expire, will not be changed by this Agreement. I will refer to my Borrowers Protection Plan Addendum for complete terms and conditions of my BPP. If I need details about the adjusted BPP fee for my modified loan, I should contact you by calling 1.866.317.5116.

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America immediately by calling 1.866.317.5116.

M. OPTIONAL PRODUCTS PURCHASED AFTER CLOSING. I understand and agree that any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment: (a) will remain in force so long as I add the amount due and owing to my Total Monthly Payment each month; and (b) will continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless (i) I notify the provider of the optional product of my request to cancel; or (ii) I fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents. I understand that if I have questions regarding any optional product(s) I may have purchased, I should contact Bank of America by calling 1.800.641.5298.

N. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Program and (v) any HUD certified housing counselor.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

P.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

Q.  In the event of default under this Agreement and/or the Loan Documents, I absolutely assign and transfer to Lender any and all rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. I unconditionally authorize Lender or Lender's agents to collect the Rents, and agree that each tenant of the Property shall pay the Rents to Lender or Lender's agents. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only. I further agree that all Rents collected by Lender or Lender's agents shall be applied first to any fees, charges, assessments or other costs associated with managing the Property and collecting the Rents. Any amounts collected that exceed the costs of managing the Property and collecting the Rents shall be applied to the outstanding indebtedness under the Loan Documents in the manner described in the Loan Documents. If the amounts collected are insufficient to cover the costs of managing the Property and collecting the Rents, any additional expenditure by Lender for such purpose shall become indebtedness secured by the Security Instrument as per the Loan Documents. This assignment of Rents of the Property shall terminate when the indebtedness secured by the Security Instrument is paid in full.

Upon Lender's request after default, I shall assign to Lender any lease and/or sublease (collectively "Lease") of the Property and all security deposits made in connection with any Lease of the Property. Upon the assignment, Lender shall have the right to modify, renew, extend or terminate any Lease, in its sole discretion. I represent and warrant that I have not executed any prior assignment of Lease or the Rents, and have not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph or the Loan Documents.

R.  I agree that if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, accelerate the debt and require immediate payment of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Agreement. If Lender exercises this option, Lender shall give notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed to pay all sums secured by the Security Instrument. Unless these sums are paid prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand.

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no photocopies accepted)

_____

Robert W Edwards
(Must Be Signed Exactly As Printed)

11/19/2014
MM/DD/YYYY

Image ID: 000000919052 Type: CRP
Recorded: 01/23/2006 at 09:16:42 AM
Fee Amt: $62.00 Page 1 of 17
Craven, NC
Becky Thompson Register of Deeds
BK 2407 PG 282

# DEED OF TRUST

LOAN # ▮▮▮▮

Return To: FL9-700-01-01, JACKSONVILLE POST CLOSING, BANK OF AMERICA
9000 SOUTHSIDE BLVD., BLDG 700, FILE RECEIPT DEPT., JACKSONVILLE, FL 32256
Prepared By: NANCY PORTER, BANK OF AMERICA, N.A., 900 W. TRADE STREET GATEWAY
VILLAGE, 3RD FLOOR, CHARLOTTE, NC 282550001

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 17, 2006
together with all Riders to this document.
(B) "Borrower" is ROBERT W. EDWARDS AND TRENA H. EDWARDS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of THE UNITED STATES OF AMERICA

NORTH CAROLINA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®-6(NC) (0207)    Form 3034 1/01
Page 1 of 15-    Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 900 W. TRADE STREET, GATEWAY VILLAGE, 3RD FLOOR, CHARLOTTE,
NC 282550001

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is PRLAP, INC.

(E) "Note" means the promissory note signed by Borrower and dated JANUARY 17, 2006
The Note states that Borrower owes Lender TWO HUNDRED TWENTY FIVE THOUSAND AND
00/100                                                                                    Dollars
(U.S. $      225,000.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than      FEBRUARY 01, 2036

(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

▮▮▮▮▮▮▮▮                                                  Initials: _____

VMP®-6(NC) (0207)                          Page 2 of 17                         Form 3034 1/01
CWC 01/17/06 11:38 AM 6379I  BK 2407 PG 283

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the COUNTY                                          of CRAVEN
          [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."



Page 3 of 17

ᴮᴷ2407 ᴾᴳ284

Parcel ID Number: 7100L013                          which currently has the address of
105 BARKSIDE LANE                                                  [Street]
NEW BERN                          [City], North Carolina 28562          [Zip Code]
("Property Address"):

    TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

                                                  Initials: _____

⊕₋6(NC) (0207)                    Page 3 of 16                    Form 3034 1/01
CVNC 01/17/06 11:38 AM 6379600940

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 then Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions

Initials: _____

-6(NC) (0207)                           Page 4 of 17                          Form 3034 1/01
CVNC 01/17/06 11:38 AM 6379   BK 2407 PG 285

of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all · Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect end hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later then the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.  ·

·   If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was

required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Page 7 of 17

@D -6(NC) (0207)

BK **2407** PG **288**

Initials: _____

Form 3034 1/01

CVNC 01/17/06 11:38 AM 63

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve, if permitted under Applicable Law, in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve, if permitted under Applicable Law. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

—6(NC) (0207)                                                    Initials: _____

CWNC 01/17/06 11:38 AM 63'        Page 8 of 17        Form 3034 1/01

BK 2407 PG 289

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, if permitted under Applicable Law, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Lender and Borrower providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

Initials: _____

-6(NC) (0207)                          Page 9 of 17                    Form 3034 1/01
CWC 01/17/06 11:38 AM 6        BK 2407 PG 290

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the

-6(NC) (0207)     Page 10 of 17     Initials: _____     Form 3034 1/01

CVNC 01/17/06 11:38 AM 637   BK 2407 PG 291

charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If

-6(NC) (0207)                    Page 11 of 17                Initials: _____          Form 3034 1/01
CWC 01/17/06 11:38 AM 531   BK 2407 PG 292

Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum



Page 12 of 17    Initials: _____

⊕ -6(NC) (0207)    BK 2407 PG 293    Form 3034 1/01
CWNC 01/17/06 11:38 AM 63?I

products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Initials: _____

-6(NC) (0207)                          Page 13 of 17                          Form 3034 1/01

CNC 01/17/06 11:38 AM 63  BK 2407 PG 294

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of        FIVE        % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Attorneys' Fees. Attorneys' fees must be reasonable.

BK 2407 PG 295

Page 14 of 17

Initials: _____

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          ROBERT W. EDWARDS              -Borrower

_____          _____ (Seal)
                                          Trena H. Edwards               -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower         TRENA H. EDWARDS            -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                  -Borrower

BK **2407** PG **296**

STATE OF NORTH CAROLINA, *CRAVEN* County ss:

I, *RETA K. LAMB* , a Notary Public

of the County of *CRAVEN* , State of North Carolina, do hereby certify that

*Robert W. Edwards & Trena H. Edwards*

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this *17* day of *January 2006*

My Commission Expires:

*May 23, 2009*

Notary Public



STATE OF NORTH CAROLINA, County ss:

The foregoing certificate of

a Notary Public of the County of , State of , is

certified to be correct.

This day of

Register of Deeds

By

Deputy Assistant

BK **2407** PG **297**

Filed for registration at *9:16 AM* o'clock

This *Jan 23, 20 06*

Book *2407* Page *292*

*Becky Thompson by Anna Strange*

Register of Deeds Craven County

Becky Thompson

Initials:

Form 3034 1/01

©302₅—8(NC) (0207)

CVNC 01/17/06 11:38 AM 6339600940

Page 16 of 16

EXHIBIT A

All of that certain lot or parcel of land lying and being situated in Number Seven (7) Township, Craven County, North Carolina, and being more particularly described as follows:

Being all of Lot No. 13, as the same is shown and delineated on a map of HUNTER'S RIDGE SUBDIVISION, PHASE 1, said map being recorded in Plat Cabinet F, Slide 184 B through D, in the Office of the Register of Deeds of Craven County, reference to said map being hereby made for a more perfect description of said property.

This conveyance is made subject to those certain restrictive and protective covenants recorded in Book 1462, Page 487, in the Office of the Register of Deeds of Craven County.

36/re/edwards.des

Page 17 of 17

BK **2407** PG**298**

This Document eRecorded:          01/23/2017   01:32:25 PM
Fee: $26.00        DocType: ASGMT        Tax: $0.00
Craven County, North Carolina
Sherri B. Richard, Register of Deeds

**When Recorded Return To:**
Bank of America
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Doc ID: ███████████

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Submitted electronically by Nationwide Title Clearing, Inc. in compliance with North Carolina statutes governing recordable documents and the terms of the Submitter Agreement with the CRAVEN County Register of Deeds. GS 47-14 (a1) (5)

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **BANK OF AMERICA, N.A., WHOSE ADDRESS IS 4909 SAVARESE CIRCLE, TAMPA, FL 33634**, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to **SPECIALIZED LOAN SERVICING, LLC, WHOSE ADDRESS IS 8742 LUCENT BLVD., STE 300, HIGHLAND RANCH, CO 80129** (303)895-2405, **ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust is dated 01/17/2006, executed by **ROBERT W. EDWARDS AND TRENA H. EDWARDS** to **BANK OF AMERICA, N.A.** in the amount of $225,000.00, was recorded as **Book 2407, Page 282 and Workflow # 475300**, in the office of the Recorder of **CRAVEN** County, **North Carolina.**

Dated on _____JAN 1 8 2017_____ (MM/DD/YYYY)
BANK OF AMERICA, N.A.

By: _____
Susan E. Smith
ASSISTANT VICE PRESIDENT

STATE OF FLORIDA    COUNTY OF HILLSBOROUGH    ___JAN 1 8 2017___
The foregoing instrument was acknowledged before me on _____ (MM/DD/YYYY), by Susan E. Smith as ASSISTANT VICE PRESIDENT of BANK OF AMERICA, N.A., who, as such ASSISTANT VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
DAVID S HILBERT
Notary Public - State of FLORIDA
Commission expires: 5/22/20

┌─────────────────────────────┐
│  DAVID S. HILBERT           │
│  Notary Public, State of Florida │
│  Commission# FF 094928       │
│  My comm. expires May 22, 2020 │
└─────────────────────────────┘

Document Prepared By: Lisa Campbell Moore, Bank of America, N.A. 4909 Savarese Circle, Tampa, FL 33634
(800) 444-4302

When Recorded Return To:
Bank of America
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Doc ID: █████████

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Submitted electronically by Nationwide Title Clearing, Inc. in compliance with North Carolina statutes governing recordable documents and the terms of the Submitter Agreement with the CRAVEN County Register of Deeds. GS 47-14 (a1) (5)

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **BANK OF AMERICA, N.A., WHOSE ADDRESS IS 4909 SAVARESE CIRCLE, TAMPA, FL 33634,** (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to **SPECIALIZED LOAN SERVICING, LLC, WHOSE ADDRESS IS 8742 LUCENT BLVD., STE 300, HIGHLAND RANCH, CO 80129 (303)895-2405, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust is dated 01/17/2006, executed by **ROBERT W. EDWARDS AND TRENA H. EDWARDS** to **BANK OF AMERICA, N.A.** in the amount of $225,000.00, was recorded as **Book 2407, Page 282 and Workflow # 475300,** in the office of the Recorder of **CRAVEN** County, **North Carolina**.

Dated on ___JAN 1 8 2017___ (MM/DD/YYYY)
BANK OF AMERICA, N.A.

By: _____
Susan E. Smith
**ASSISTANT VICE PRESIDENT**

STATE OF FLORIDA    COUNTY OF HILLSBOROUGH
The foregoing instrument was acknowledged before me on ___JAN 1 8 2017___ (MM/DD/YYYY), by Susan E. Smith as ASSISTANT VICE PRESIDENT of BANK OF AMERICA, N.A., who, as such ASSISTANT VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
DAVID S HILBERT
Notary Public - State of FLORIDA
Commission expires: 5/22/20

DAVID S. HILBERT
Notary Public, State of Florida
Commission# FF 934928
My comm. expires May 22, 2020

Document Prepared By: Lisa Campbell Moore, Bank of America, N.A. 4909 Savarese Circle, Tampa, FL 33634
(800) 444-4302

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date this paper was served upon the following parties by depositing a copy enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service or via the appropriate electronic servicer:

Debtors:
Robert Warren Edwards
105 Barkside Lane
New Bern, NC  28562

Trena Hardison Edwards
105 Barkside Lane
New Bern, NC  28562

Attorney for Debtors:
Blake Y. Boyette
Stubbs & Perdue, P.A.
PO Box 1654
New Bern, NC  28563

Chapter 7 Trustee:
John C. Bircher, III
White & Allen, PA
1319 Commerce Drive
PO Drawer U
New Bern, NC  28563

Bankruptcy Court Administrator
434 Fayetteville Street, Suite 640
Raleigh, NC 27601

This the 31st day of January, 2020.

HUTCHENS LAW FIRM LLP

BY:  _s/Joseph J. Vonnegut_____
JOSEPH J. VONNEGUT
Attorney for Movant
NC State Bar No: 32974
Post Office Box 2505
4317 Ramsey Street
Fayetteville, NC 28302
(910) 864-2668

Firm Case No: 1296047 (BK.FAY)